```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
      - - - - - - - - - - - - - - - x
 3    THE UNITED STATES OF AMERICA,
                                       Criminal Action No.
 4                 Plaintiff,          1:21-cr-00102-JDB-1
                                       Wednesday, April 26, 2023
 5    vs.                              3:04 p.m.

 6    MICHAEL TERRELL ROBERSON,

 7                 Defendant.
      - - - - - - - - - - - - - - - x
 8
 9    _____

10              TRANSCRIPT OF SENTENCING HEARING
           HELD BEFORE THE HONORABLE JOHN D. BATES
11                 UNITED STATES DISTRICT JUDGE
      _____
12
      APPEARANCES:
13
      For the United States:     EDUARDO A. PALOMO, ESQ.
14                               NICHOLAS GEORGE MIRANDA, ESQ.
                                 U.S. DEPARTMENT OF JUSTICE
15                               1301 New York Ave., NW
                                 Washington, DC 20530
16                               (202) 579-5738
                                 eduardo.palomo2@usdoj.gov
17                               nicholas.miranda@usdoj.gov

18    For the Defendant:         MICHAEL E. LAWLOR, ESQ.
                                 BRENNAN MCKENNA & LAWLOR
19                               6305 Ivy Lane, Suite 700
                                 Greenbelt, MD 20770
20                               (301) 474-0044
                                 mlawlor@verizon.net
21

22    Court Reporter:            Lisa A. Moreira, RDR, CRR
                                 Official Court Reporter
23                               U.S. Courthouse, Room 6718
                                 333 Constitution Avenue, NW
24                               Washington, DC  20001
                                 (202) 354-3187
25
```

```
1                      P R O C E E D I N G S
2              THE COURTROOM DEPUTY:  Your Honor, we have
3    Criminal Action 21-102, United States of America vs. Michael
4    Roberson.  We have Mr. Eduardo Palomo and Mr. Nicholas
5    Miranda representing the government and Mr. Michael Lawlor
6    representing Mr. Roberson, who is present, and we also have
7    Ms. Jessica Reichler representing probation.
8              THE COURT:  Okay.  Good afternoon to everyone.  We
9    are here for a sentencing in this matter.  And let me first
10   ask you, Mr. Lawlor, on behalf of yourself and Mr. Roberson,
11   whether you've received the presentence report prepared by
12   the probation office and had a chance to review it and
13   whether there are any remaining issues in dispute with
14   respect to it?
15             MR. LAWLOR:  We have reviewed it, and there are no
16   remaining issues, Your Honor.
17             THE COURT:  And I assume it will be Mr. Palomo
18   today.
19             MR. PALOMO:  Yes, Your Honor.
20             THE COURT:  Same series of questions:  Received,
21   reviewed, and any remaining issues with respect to the
22   presentence report?
23             MR. PALOMO:  We've received it, reviewed it, Your
24   Honor, and no remaining issues.
25             THE COURT:  Fine.  I will accept the presentence
```

1    investigation report as findings of fact on issues that are

2    not in dispute, and that is pursuant to Criminal Rule

3    32(i)(3)(A).

4              So the case does fall within the Sentencing Reform

5    Act of 1984, and by that act Congress created the United

6    States Sentencing Commission, and the commission has issued

7    detailed guidelines for judges to consider in determining

8    the sentence in a criminal case.

9              There are sentencing ranges that have been set for

10   specific offenses, and the ranges are all contained in the

11   guidelines manual, and the method of reaching those ranges

12   is set out in the guidelines manual as well.

13             But the guidelines are not mandatory.  They are

14   advisory, although they must be consulted by the Court in

15   determining the appropriate sentence in a case, and I will

16   do that here.  I will assess and determine the proper

17   sentence by referring to and considering the Sentencing

18   Guidelines in the first instance.

19             But those guidelines would be treated as advisory,

20   not mandatory, and there's no presumption that a guidelines

21   sentence is the correct sentence.  The guidelines will be

22   considered along with all other relevant factors.  And

23   that's consistent with and pursuant to Title 18 of the U.S.

24   Code Section 3553(a).

25             We're here because the defendant has pled guilty

 1      to a one-count superseding information, and that charge is

 2      possession of child pornography in violation of Title 18 of

 3      the U.S. Code Section 2252A(4)(b), and (B)2).

 4              My first obligation is to make a guideline

 5      calculation, and I do so utilizing the 2021 guidelines

 6      manual, which is here.  For this offense, the 2252A(4)4

 7      offense, the applicable guideline is in Section 2G2.2 of the

 8      guidelines manual, and under that provision, the base

 9      offense level for this offense is 18.

10              There are then several special offense

11      characteristics that apply, and the probation office has

12      applied them and I believe correctly.  They are as follows:

13              Under 2G2.2(b)(2), because the material involved a

14      prepubescent minor under the age of 12, two levels are

15      added.

16              Under 2G2.2(b)(3)(B), there is an additional five

17      levels that are added because the defendant distributed

18      material in exchange for valuable nonpecuniary

19      consideration.  Here that was to obtain access to other

20      child pornography materials through the Dropbox.

21              Then under Section 2G2.2(b)(4) of the guidelines,

22      four additional levels are added because the offense

23      involved sadistic or masochistic conduct or depiction

24      through the materials of sadistic or masochistic conduct or

25      the abuse of an infant or toddler, and that's four

1    additional levels.

2           Two more levels are added under Section

3    2G2.2(b)(6) because the offense involved the use of a

4    computer.

5           And finally, two levels are added under

6    2G2.2(b)(7)(A) and the comment at Note 6, because this

7    offense involved more than ten but less than 150 images.

8    That number is determined by a calculation that basically

9    makes a single video, which is what we're dealing with here,

10   of certain length equivalent to 75 images.  And as I said,

11   two levels are added under that provision.

12          Those 15 additional levels added through special

13   offense characteristics results in an adjusted offense level

14   of 33, which is then reduced downward by two levels under

15   3E1.1(a) of the guidelines for the acceptance of

16   responsibility, a clear demonstration of acceptance of

17   responsibility.

18          The third level that is applied in some instances

19   is not applied here.  The government has not moved for it,

20   and that, therefore, is not applied.  And that means that

21   the total offense level is Level 31.

22          With respect to criminal history, there are no

23   prior convictions, no criminal history points; and,

24   therefore, the defendant is in the lowest criminal history

25   category, which is a Category 1.

1           The guideline range for imprisonment based on a

2    total offense level of 31 and a criminal history category of

3    1 is 108 to 135 months.

4           Any objection to those conclusions as to the

5    appropriate offense level, criminal history category, and

6    advisory guideline range as determined under the Sentencing

7    Guidelines, Mr. Palomo?

8           MR. PALOMO:  Not from the government, Your Honor.

9           THE COURT:  Mr. Lawlor?

10           MR. LAWLOR:  No, Your Honor.

11           THE COURT:  Now, as I've said, the guidelines are

12    advisory.  They're not mandatory, but they will be

13    considered.  I have to do the guideline calculation and

14    consider the guidelines, and I will do so along with all

15    other relevant factors as I determine the proper sentence in

16    this case.

17           So I think at this point I can turn things over to

18    first the government, through Mr. Palomo, then the defense,

19    through Mr. Lawlor, and then Mr. Roberson, as well, if he

20    would like to address the Court.

21           Let's start with you, Mr. Palomo.

22           MR. PALOMO:  Thank you, Your Honor.

23           The distribution of child pornography is an

24    indisputably serious offense.  This is something that courts

25    around the country recognize.  It's something that society

1    at large recognizes.  It's beyond dispute that it's a

2    serious offense.

3              The defendant's request for a noncustodial

4    sentence is a flagrantly unreasonable request in view of how

5    serious this offense is.

6              THE COURT:  Well, there are judges in this

7    courthouse that have imposed probationary sentences for

8    possession of child pornography.  More than one judge.

9              MR. PALOMO:  The government submits that on those

10   cases with consideration of the individual merits of those

11   cases -- I haven't reviewed all of those, but the

12   overwhelming number of cases across the country do not

13   involve noncustodial sentences.

14             THE COURT:  Well, that's certainly true.

15   Noncustodial sentences are in less than 1 percent of the

16   cases.  And even for possession cases, I think it's pretty

17   close to that.

18             MR. PALOMO:  The reason that the government

19   submits that that's not an unreasonable request in this case

20   is because this case isn't one of those extreme outliers

21   that would justify an extreme outlier sentence.

22             What we have is serious offense conduct.  We have

23   a defendant that might have some mitigating factors in his

24   past, certainly with his history of sexual abuse.  That's

25   something that the Court should consider, and something that

1    the Court must consider in arriving at its sentence.

2              However, a claim of prior childhood sexual abuse

3    is, very unfortunately, not uncommon in these types of

4    cases.  It's something that I encounter regularly in my

5    cases.  These are the only kinds of cases that I do.  So the

6    defendant hasn't presented anything that would justify an

7    extreme departure --

8              THE COURT:  So what are the kinds of things that

9    are presented in some of those cases that result in

10   probationary sentences that are not present here?

11             MR. PALOMO:  Some of the ones that the defense has

12   cited before are defendants that are mentally disabled,

13   defendants of advanced age, defendants with acute health

14   conditions that would present extreme dangers to them were

15   they to be incarcerated.  Things that just aren't present

16   here.

17             So the defense has spent a lot of time discussing

18   things that really don't rise to the level of this extreme

19   or unusual circumstance that would justify an extreme and

20   unusual downward variance.

21             What we're left with is a case that frankly looks

22   similar to a lot of the other cases like this.

23             THE COURT:  Well, I mean, not to make the

24   defense's argument for them, but it seems to me that what

25   they're presenting as important factors here that may

1    warrant what they seek, a noncustodial sentence, are things

2    that you've mentioned, which is the prior history of sexual

3    abuse, mental health issues, what they would call a single

4    item of child pornography being involved.  And why aren't

5    those things enough to warrant, even if not a noncustodial

6    sentence, a very, very reduced sentence of incarceration by

7    means of a variance?

8              MR. PALOMO:  First, the government disagrees with

9    the characterization of this as only one video.

10             THE COURT:  I understand.

11             MR. PALOMO:  I mean, the government takes a hard

12   stance on that point.  This is much more than one video.

13   This is prolonged conduct over the course of 14 months.

14             THE COURT:  The problem is that -- I understand

15   that, and I understand that there's a basis for that.

16             The problem is we don't have any hard evidence

17   that Mr. Roberson possessed other videos.

18             MR. PALOMO:  By necessary implication --

19             THE COURT:  By implication he must have because he

20   was seeking access to the Dropbox, and that's what was in

21   the Dropbox.

22             MR. PALOMO:  This is certainly something that the

23   defendant would like the Court to believe, that this was an

24   isolated incident limited to just that one time where he

25   clicked send to FrankYank31, and that is emphatically not

1    the case.  That would be an unreasonable distortion of the

2    facts in this case, and it minimizes what he did.

3           So if we're to take what the Court was saying

4    before in terms of these different mitigating circumstances,

5    the Court should weigh them against the seriousness of his

6    offense conduct.

7           So first, dealing with these other mitigating

8    circumstances, the Court should consider those.  The

9    government's not asking that the Court ignore those.  The

10   Court cannot ignore those.

11          But those don't rise to the level of being

12   particularly unique.  They're not extreme circumstances.

13   When he's asking for an extreme downward variance, there

14   should be a correspondingly extreme and unusual reason to

15   grant that, and the defendant is not providing that.

16          Instead, what he provides is this shocking

17   psychosexual evaluation that says he is at no risk to

18   reoffend, and the government -- when I read that, I had to

19   do a double-take.

20          This is a provider that did no risk assessments;

21   didn't use a Static 99R, STABLE-2007, didn't use the VRAG,

22   didn't use the Abel test, didn't use the personality

23   inventory assessment, didn't do any of that, and then he's

24   able to boldly conclude as if he's got some kind of crystal

25   ball that this man is at no risk for reoffense.  That is

```
1    completely shocking.
2             I think that demonstrates that this is more of a
3    partisan document.
4             THE COURT:  So I understand, and the way you've
5    put it exactly, that I shouldn't give weight to the
6    assessment by Dr. Kraft that the defendant is at no risk of
7    reoffending --
8             MR. PALOMO:  You should --
9             THE COURT:  But is it not true that the risk of
10   sexual recidivism for possession cases is pretty low?  Isn't
11   it like 4 percent?
12            MR. PALOMO:  If we're talking about risk of
13   reoffense as judged by the Static 99R, Your Honor, the
14   Static 99R is not designed to be used for people convicted
15   of only possessing or distributing child pornography.
16            THE COURT:  That's not what I'm talking about.
17   I'm talking about the Sentencing Commission's statistics
18   looking at cases and looking at reoffenses.  And isn't it
19   true that under that assessment -- which is a different
20   assessment.  It's not an assessment based on medical or
21   other testing.  It's based on what has happened with respect
22   to these offenders.  Aren't the statistics that the
23   likelihood of sexual reoffense -- and I don't mean that
24   someone has a DUI or some other offense, but of a sexual
25   crime -- is very, very low, isn't it?
```

1      Part of the reason is that people are under pretty

2  heavy supervision.

3      MR. PALOMO:  It's the chicken-and-egg argument to

4  an extent, Your Honor.

5      But the government will note at the beginning that

6  4 percent is still too much; that right now with the

7  prevalence of technology --

8      THE COURT:  I agree with that.

9      MR. PALOMO:  I know that the Court --

10     THE COURT:  One is too much.

11     MR. PALOMO:  But with the prevalence of technology

12  now and understanding that at some point the defendant will

13  come off of supervision, and that when he comes off of

14  supervision after he's released from imprisonment technology

15  is going to be different.

16     What's the upper trend right now?  Anonymization

17  on the Internet, encryption; encryption that is impossible

18  to break.  And it's not as if this is -- it's not as if

19  we've never seen somebody who was convicted of a child

20  pornography distribution or trafficking offense and later

21  gets convicted of the same.

22     If you look at --

23     THE COURT:  I'm not sure exactly where this is

24  going.  If it's going to the place where you're arguing that

25  because of advances likely to occur in technology I should

1    be sentencing to a longer term of imprisonment, I'm not sure

2    I understand the logic.

3              MR. PALOMO:  The point that I'm making, Your

4    Honor, is that the 4 percent number is not a comprehensive

5    view of risk of reoffense.

6              So camping out on any one particular number might

7    be useful as guideposts in general, but this Court needs to

8    take a look at this individual defendant, and especially

9    with his history of minimizing his conduct, outright lying,

10   as he did to the person that evaluated him in his

11   psychosexual eval --

12             THE COURT:  Once again we have sort of an

13   imbalance or it cuts both ways because you're right, there

14   is some evidence of denial and deceptive responses to

15   investigators.

16             On the other hand, some of it is explained by

17   circumstances I'm sure you'll point out.  This is conduct in

18   2016, and there's no evidence of any similar conduct since

19   2016.

20             MR. PALOMO:  We have no evidence right now of

21   conduct since November of 2016 when he sent his last email

22   to FrankYank.

23             I believe we have some search terms --

24             THE COURT:  And there's a period of I think over

25   two years before investigators came to him.

1      MR. PALOMO:  Right.

2      THE COURT:  So it's not like the investigation

3  stopped that communication with Frank.  It stopped.

4      MR. PALOMO:  And all the while, we see him

5  cultivating very close contact with very young children

6  where he was a day care teacher.

7      THE COURT:  Again, it cuts both ways, Mr. Palomo.

8  You're absolutely right.  That's something to be concerned

9  about.

10     MR. PALOMO:  It is extremely concerning.

11     THE COURT:  On the other hand, there's no evidence

12  that his contact with close children led to any

13  inappropriate conduct with respect to those children.

14     MR. PALOMO:  And if we're using the fuzzy math of

15  risk assessment, it is certainly not an exact science.  The

16  government's point here is that this is simply too risky;

17  that his continued close contact with children; his use of a

18  dance program to cultivate more contact with 6-, 7-, 8-year

19  old girls; this online movement that he's on where he's

20  trying --

21     THE COURT:  He's likely to have a condition of

22  supervision that would prohibit his contact with children of

23  that age --

24     MR. PALOMO:  That's correct, Your Honor.

25     THE COURT:  -- whether he's incarcerated or not,

1    right?

2          MR. PALOMO:  Yes, Your Honor.  I mean, the

3    government would definitely request -- I think it's a

4    mandatory condition here so...

5          But the point is that here we're dealing with a

6    risky individual, and if we juxtaposed that history against

7    the psychosexual evaluation, which is premised on no risk

8    assessments that the Court normally sees in many other

9    cases, risk assessments that while the government might take

10   issue with one like the Abel assessment, for example, we

11   don't even see that here.  We see nothing.  It's just kind

12   of an opinion.

13         This seems to be more of an advocacy piece than it

14   is a legitimate psychosexual eval.  To the extent that we

15   see this turning into a legitimate psychosexual eval that's

16   based on self-reporting, it's based on the self-reporting of

17   a deceptive person, somebody that submits consistently with

18   deceptive statements.

19         So he reports no sexual attraction --

20         THE COURT:  "He" meaning Dr. Kraft, or "he"

21   meaning Mr. Roberson?

22         MR. PALOMO:  Well, Mr. Roberson's statements to

23   Dr. Kraft.

24         THE COURT:  Okay.

25         MR. PALOMO:  So this is Dr. Kraft repeating what

1   Mr. Roberson told him.  He reports no sexual attraction to

2   prepubescent males or females and has never searched for

3   underage pornography.

4          Well, the government attached his search history

5   from his Gmail account.  He searched for little girl

6   underwear models.  He searched for boy dick, boy boners, and

7   come.  He wasn't being truthful with this provider.  What

8   he's trying to do is manipulate him so that he can arrive at

9   a more favorable document.

10         When he writes, "My interactions with FrankYank

11  were simply role-play," this is patently ridiculous, and the

12  fact that this evaluator simply copies and pastes that and

13  writes it as if it's truthful without exploring it further

14  or challenging it is just an obvious distortion of the

15  facts.  There's no role-play when we're talking about

16  exchanging Dropbox emails.  They didn't have fulsome

17  conversations.  He didn't even know where FrankYank was

18  from.  He didn't know the guy's name.  He didn't know

19  anything about him.

20         So the fact that Mr. Roberson can tell this

21  provider that he didn't search for minors to interact with

22  online is, again -- that's just a lie.  That's not true.

23         And the Court -- I hope the Court remembers the

24  hours of interviews that he gave to Special Agent Abruzzese

25  where they --

1          THE COURT:  It goes to the proceedings earlier in

2      this case.  I went through them.

3          MR. PALOMO:  Yes, Your Honor.

4          THE COURT:  I heard them in the courtroom as

5      witnesses.

6          MR. PALOMO:  He went down some rabbit holes, and

7      sometimes he wasn't answering the question that he was

8      asked.  And then one of the rabbit holes was his online

9      movement, and this is still perplexing to the government.

10     It seems that he was part of some kind of online vigilante

11     group.

12         But the purpose of this is exactly what he denied

13     to this treatment provider.  He explicitly sought access to

14     minors online, children that he thought were at risk, and

15     then he would send his reports or something like that to

16     this shadowy figure, Ms. Nina, that he believed was in

17     Florida.  He was seeking out access to children in a very

18     concerning way.

19         So other concerning claims that he made to his

20     treatment provider is that he claims that FrankYank was like

21     a father figure to him.  And the fact that the treatment

22     provider included this in their report without any formal

23     challenge at all is one of the most concerning things that

24     I've seen; that he can claim that FrankYank was like a

25     father figure to him would either point to this person

1    being, I mean, just completely checked out or submitting a

2    document that is really not that reliable.

3         And the government's point with the psychosexual

4    eval is just that it's not a reliable document.  The Court

5    should put minimal weight in it.

6         There might be some instances in there where he

7    discusses items of his past that the Court can put weight

8    on, but generally in terms of a risk assessment from that,

9    it's not a reliable document.  It's not something that

10   should figure heavily into the Court's analysis, and it's

11   certainly not something that justifies some extreme downward

12   variance.

13        So one of the most concerning things that feeds

14   into probably more of how the defendant views his crimes

15   today, after he's been convicted, after he's pled guilty to

16   that, is that he reported to the provider an attachment to

17   FrankYank and a fear of losing him, which contributed to the

18   defendant playing along with conversations related to being

19   sexual with minors and sharing images of CP, child

20   pornography.

21        Mr. Roberson needed to participate in the CP

22   viewing and sexual role-plays to maintain the relationship.

23   This is one of the most shocking things in that document,

24   but it betrays his true feelings about his crime; that he's

25   going to continue to somehow rationalize and minimize this

1    rather than calling it just what it is, distribution of

2    child pornography.  That's what it is.  That's what he did.

3    That's what his relationship with FrankYank was about.

4            It wasn't a father figure.  It wasn't some kind of

5    expression of loneliness.  This wasn't a way for him to cure

6    his social prospects.  This was him just trying to get child

7    pornography because he liked it.  That's the natural

8    conclusion here.  We don't need to think about some

9    unreasonable role-play explanation or seeking friends

10   online.  No, you don't do that for 14 months with one guy

11   when all you're exchanging is passwords.

12           The way to promote respect for the law in this

13   defendant and more broadly to the rest of the community is

14   by sentencing him to a substantial sentence of imprisonment.

15   He's shown that he does not respect the law.

16           When he says I never hurt any of my kids,

17   referring to his students, he's betraying a complete

18   detachment from the harm that underlied the creation of the

19   video that he sent to FrankYank after FrankYank said show me

20   what you like.

21           What he likes is an image or a video of a five-

22   year-old girl being raped, and then he can turn around and

23   say I never hurt any of my kids shows this unreasonable

24   detachment from reality, from the pain that that poor victim

25   experienced.

1        If the Court imposes a noncustodial sentence,

2    what's that going to do to other sexual offenders or other

3    people seeking to distribute child pornography online?  What

4    message is that?

5        It sends the message that this is not a

6    particularly serious crime.

7        THE COURT:  So assume, for the moment, for the

8    rest of your argument, that I'm not going to impose a

9    noncustodial sentence.  Tell me why 108 months is the right

10   sentence other than the fact that that happens to be the

11   bottom of the guideline range.  Is that what other judges in

12   this court or nationally are tending to impose for a crime

13   of possession such as this?

14       MR. PALOMO:  If we're talking about national

15   trends, the national trend is -- I'll probably get the

16   number wrong.  I'll say about 60 percent of them get

17   something of a downward variance.

18       THE COURT:  The average sentence for possession

19   is, like, 54 months.

20       MR. PALOMO:  If we're talking about --

21       THE COURT:  It's a pretty substantial downward

22   variance.

23       MR. PALOMO:  But that wouldn't be with the

24   guidelines calculated at 31 like they are for the defendant.

25       I'd have to go back and look at the Sentencing

1   Commission report, Your Honor, but --

2          THE COURT:  His guideline is a little higher --

3          MR. PALOMO:  Right.

4          THE COURT:  -- because of one or two of the

5   special offense characteristics.

6          MR. PALOMO:  Yes, the plus five for the

7   distribution is the big -- it really bumps it up.

8          Again, the numbers are -- I don't have them at the

9   ready, but the general characterization of those numbers

10  would be that a substantial number of those defendants that

11  have a similar guidelines range receive a downward variance,

12  but not to 55 months if they're at a Level 31.  I can't

13  recall exactly what that downward variance would be.

14         But for this defendant, the factor -- for

15  Mr. Roberson what justifies a guideline sentence is that the

16  Court should weigh his past, his experience of sexual abuse,

17  his awful childhood growing up.  But it should weigh that

18  against an obvious and demonstrated lack of respect for the

19  law and a complete unwillingness to acknowledge the harm

20  that he causes these victims.

21         The duality that lives in this man's mind, that he

22  can go care for children and then consume images of a five-

23  year-old kid being raped and say I liked that; to send

24  messages to another person saying I'd like to see little

25  boys' erections, and then the man replies back, yeah,

1    they're great, you give them a wank, too; this is extremely

2    disturbing conduct.

3            And what does he do when he's confronted by an

4    investigator?  He lies.  He distorts the truth.  He

5    minimizes what happened.  I was just a loner.  I was trying

6    to find friends.

7            He does not respect the law.

8            What justifies a guidelines sentence in this case,

9    Your Honor, is to promote respect in the law for this

10   defendant.  That is the just and correct sentence.  It's no

11   more -- it is no more harsher than necessary to promote

12   respect in the law for this defendant, Your Honor.

13           So the government requests a guidelines sentence

14   of 108 months to be followed by an appropriate term of

15   supervised release.

16           THE COURT:  Thank you, Mr. Palomo.  Let me ask you

17   one other question though.

18           There's always this question of restitution and

19   special assessments --

20           MR. PALOMO:  Yes, Your Honor.

21           THE COURT:  -- in a case like this.  And I

22   usually -- with all respect, I usually don't get much help

23   from the government on that.

24           What help are you willing to give me on that?

25   What is the government requesting?

1          MR. PALOMO:  The government's request is that

2     restitution is going to be pretty easy in this case.  We

3     didn't get a request for restitution.  I have reached out to

4     the victim's representative a number of times.  I haven't

5     heard back from them.  So we have a victim impact statement

6     on file from that victim that we provided to the Court, but

7     we've not received a restitution request and are accordingly

8     not requesting that the Court order restitution.

9          As it relates to a fine, my understanding is that

10    the defendant is indigent, so the government's not

11    requesting a fine either.

12         THE COURT:  So that would be either under a fine

13    or the assessment under 18 USC 3014(a).

14         MR. PALOMO:  That's correct, Your Honor, just the

15    mandatory special assessments for the felony, or $100, yes.

16         THE COURT:  And what about -- just so I'm covering

17    everything, and what about not 2259(b)(2)(B), because the

18    conduct I think was prior to 2018.

19         MR. PALOMO:  That's correct.

20         THE COURT:  But what about 2259A?

21         MR. PALOMO:  Big A?

22         THE COURT:  Assessment up to $17,000.

23         MR. PALOMO:  Yes, Your Honor.  My understanding is

24    the Court can waive that if they find the defendant to be

25    indigent, and that's the case here.

1          THE COURT:  Fine.  Thank you very much,

2     Mr. Palomo.

3          MR. PALOMO:  Yes, Your Honor.

4          THE COURT:  Mr. Lawlor.

5          MR. LAWLOR:  Thank you, Your Honor.

6          Your Honor, I have appeared in front of you in

7     a number of cases, including child pornography cases, and

8     so --

9          THE COURT:  Is that something that's going to

10    count in Mr. Roberson's favor or against him?

11         MR. LAWLOR:  Well, in terms of the language I use,

12    specifically for a noncustodial sentence -- let me say this,

13    that when I use that language, it is meant to convey a very

14    specific request as to language I might use in another case,

15    which is that I request a variant sentence.

16         Now, obviously I don't know what sentence the

17    Court is going to impose, but I will tell the Court that I

18    used that language for the reasons that follow because I

19    genuinely believe that that is a reasonable disposition in

20    this case.

21         And for these reasons, Your Honor:

22         First of all, Your Honor, I think starting before

23    acceptance at a Level 33 --

24         (Telephone interruption)

25         THE COURTROOM DEPUTY:  I told them.

1              MR. LAWLOR:  -- is an excessive starting point for

2      this case, Your Honor.  There are specific characteristics,

3      but Your Honor has seen the discussion, I'm sure, in fraud

4      cases this notion of factor creep.  And I'm not minimizing

5      the conduct here, but this is -- what the defendant pled to,

6      for all what the government says, is something other than

7      that.  What he pled to, what he was charged with, was an

8      isolated -- an isolated possession of one video.  I don't

9      think it is necessarily logical and certainly not fair or

10     legal to say you should sentence him for things that he was

11     neither charged with nor pled guilty to.

12              But what he pled to was one video, and so, Your

13     Honor, to -- I know specifically the use of a computer, for

14     example, has been -- that use of that enhancement has been

15     discouraged by many other district judges because it doesn't

16     really separate any defendant from another defendant.  In

17     this day and age, that is applicable in every case.

18              THE COURT:  Over 95 percent of the cases.

19              MR. LAWLOR:  Yes, and also, Your Honor, to

20     increase the base offense level by five levels for a

21     pecuniary gain, whether or not --

22              THE COURT:  A nonpecuniary gain.

23              MR. LAWLOR:  Sorry, a nonpecuniary gain.

24              THE COURT:  That's the oddity here.

25              MR. LAWLOR:  Regardless, if there was a pecuniary

1    gain, I suppose that could be argued for an enhancement or

2    nonpecuniary gain.

3              But, Your Honor, again, whether it's worth some

4    enhancement, I can see the logic behind that, but to

5    increase the base offense level by five levels in this case

6    I think overstates that factor in this case.

7              Likewise, Your Honor, he gets two levels for

8    prepubescent minor and four levels for sadomasochism for

9    basically the same rationale, that it involved a child of

10   five years.

11             THE COURT:  Excuse me, Mr. Lawlor.

12             Mr. Bradley, go make sure the phone's off.

13             MR. LAWLOR:  Now, I know it's not as easy just to

14   say that "Lawlor says those nine levels should come off, so

15   where would we begin?" but I do think that if you looked at

16   the guidelines and said well those nine levels are a little

17   shaky, and instead of at a 33, we were at a 24 -- excuse me,

18   if we were at a -- we start at a 31, so if we were at a 22,

19   I believe the range, the low end, would be 41 months.

20             And so the point is here Your Honor said -- you

21   said the guidelines are not mandatory.  They're only one

22   factor in the Court's consideration.  But I do believe the

23   government's recommendation of 108 months based on this

24   particular guideline computation is not a reasonable one.

25             I don't really want to get into an argument of why

1    I think I'm right and why the government is wrong, and I'll

2    touch on the reasonableness of our request, but to ignore

3    just that fact, the fact that computer usage is discounted

4    by many judges, for example, that five levels are being

5    added for nonpecuniary gain, not to mention the defendant's,

6    Mr. Roberson's, particular mitigation and saying, well, 108

7    months is the reasonable outcome here, that doesn't seem to

8    be sort of a reasonable analysis both of the guidelines in

9    this case and Mr. Roberson's background.

10            THE COURT:  It seems to me that each side has sort

11   of the same -- with different bases for the rationale, but

12   the same ultimate observation, which is the other side's

13   extreme request simply isn't reasonable; either the

14   government's 108 months or the defense's noncustodial

15   sentence.

16            MR. LAWLOR:  Well, I mean, I suppose --

17            THE COURT:  And if you're both right that the

18   other side isn't reasonable, then what is a reasonable

19   sentence?

20            MR. LAWLOR:  Hence the judge, Your Honor.  But I

21   do believe that my request is a reasonable one not just

22   because I think the guidelines are overstating the offense

23   conduct here, but also in consideration of Mr. Roberson's

24   background.

25            And, Your Honor, if you say that many defendants

1    have been sexually abused in their past in CP cases, they

2    should all get a variance.  Not none of them.  Because it's

3    a mitigating fact.

4            The fact that if there is some correlation between

5    the fact that you were sexually abused as a child and that

6    you then later participate in either the possession or

7    distribution of child pornography, that's a mitigating fact.

8    And I think, without getting into any sort of deep analysis,

9    to look at the defendant's background not as individual

10   pieces but collectively and suggest that it's not mitigating

11   seems to lack any understanding of what mitigation is.

12           And here, Your Honor, this isn't just someone who

13   was sexually abused.  And I don't want to be too graphic,

14   but this was not --

15           THE COURT:  You don't have to be because I've

16   looked at the materials.

17           MR. LAWLOR:  In Mr. Roberson's history, though,

18   Your Honor, these weren't touching offenses that he was the

19   victim of.  They were much more severe than that, in a home

20   when he basically had no parents so he was raising himself.

21           And it's unfortunate that you see this.  But as

22   you do, it's oftentimes with people who have a lack of

23   economic support, a lack of parental support.  And then

24   they're in an urban environment, you often see mental health

25   problems and drug and alcohol abuse, which is what you see

1    here for Mr. Roberson.

2              So none of this takes away from the seriousness of

3    the offense, and if we were just stopping there, it would be

4    maybe an interesting -- more interesting debate, for lack of

5    a term, between the government and Mr. Roberson's counsel,

6    but one of the things to me that is the most important thing

7    for the Court to look at here is the seven and a half years

8    of noncriminal conduct by Mr. Roberson, including, as the

9    Court pointed out, two years when he was not under arrest.

10             And so it does appear that -- I can't slice and

11   dice what was going on in Mr. Roberson's life at that

12   particular moment in time that led him to involve himself

13   with child pornography, but I do believe -- and this is a

14   little bit of a lay opinion -- that this was someone

15   struggling with his sexual identity, who was perhaps

16   unwilling or undesiring to face the reality of certain

17   things that were going on in his own life.

18             I don't know that to be true, but it's important,

19   I think, when you see that he stops on his own; that there's

20   nothing that happens in the first 24 years of his life.

21             And then there's this period of time when he's

22   engaged with somebody -- the relationship's hard to

23   understand -- and then he stops, not because he gets

24   arrested; and then he gets arrested, and he's -- other than

25   a short period of time, he's not incarcerated, and there's

1    no reoffending.  And to that end, Your Honor, it's not just

2    that he didn't possess or distribute child pornography

3    during these seven and a half years and then five and a half

4    years, give or take, that he was on supervision, but his

5    conduct in the community was -- as we discussed at a prior

6    hearing, there were a few bumps in the road, but I would say

7    that they were fairly minor.

8         And so, Your Honor, I think the government's

9    attempt to diminish the report by Dr. Kraft is troubling for

10   a few reasons.

11        Number one, you didn't mention this in your

12   memorandum.

13        Number two, in every other case that I've had in

14   this court the government has asked for, at sentencing, a

15   valuation by the Bureau of Prisons, which I've acceded to in

16   every single case; and I would have here, but there was no

17   request at sentencing.

18        I've never seen a sentencing without a

19   psychosexual evaluation.  I know that this is -- I don't

20   need the Court to advertise the importance of that

21   evaluation in a case involving a sexual offense involving

22   children, so I sought out to make sure that an evaluation

23   was done.

24        They could have called Dr. Kraft.  I gave them his

25   CV.  They could have said, "Time out.  We don't like this

1   evaluation.  We want to continue sentencing and have BOP do

2   an evaluation."

3          And I would have said, "No problem.  We've got

4   nothing to hide here."

5          I believe utterly 100 percent the Bureau of

6   Prisons' evaluation would say the exact same thing because

7   it's seven and a half years without him reoffending.

8          And so I think it's troubling that the

9   government's taking the view that they're taking

10  involving -- regarding, rather, I should say --

11         THE COURT:  Well, I understand your position and

12  don't discount it, but I do think it's incumbent upon me to

13  ask about the assertion by the government not only in the

14  context of the Dr. Kraft evaluation but also in the context

15  of the investigation, that Mr. Roberson has consistently

16  been in denial and/or deceptive and/or misleading in his

17  responses to questions.

18         What's the response that you have to that?

19         MR. LAWLOR:  My response to that is the same.

20         And, look, I'll be honest with you here, Your

21  Honor -- perhaps I shouldn't be -- but we were getting very,

22  very close to trial, and you'll recall Mr. Roberson pled

23  guilty on the morning of trial.

24         I couldn't get Mr. Roberson to admit this conduct

25  to me, and I think that stems from one thing and one thing

1       alone, is it's embarrassing.  I think it's tied to what I

2       just mentioned.

3                This is a church-going man who wants to be a

4       minister who lives in a certain community, and I believe

5       that his admission that his sexual identity was of a certain

6       kind is troubling for him.

7                THE COURT:  But that's not totally consistent

8       with, I believe, what happened with the investigators.  I

9       think to the investigators ultimately he admitted that he

10      did do --

11               MR. LAWLOR:  He did, and then he said he came out,

12      and he had a lot of trouble with that with his mother.

13               THE COURT:  But that's years ago.

14               MR. LAWLOR:  That's years ago.

15               Look, Your Honor, I don't pretend to understand

16      this.  This is, again, deep into somebody's psyche here.

17      I'm just giving you -- you know, I've spent a lot of

18      time with Mr. Roberson, and so I'm just giving you sort

19      of my armchair belief that this is somebody who struggles

20      with embarrassment about the offense, someone who can't

21      believe -- because I think he truly does.  Notwithstanding,

22      again, the government's concern about him being around

23      children in these other pursuits, I think Mr. Roberson is

24      someone who genuinely loves children, perhaps probably will

25      never get to work with them again, which would be painful

1    for him because I think this -- again, Your Honor, we can

2    talk about risk and then we can talk about someone who's 31

3    years old and has never had a single complaint about an

4    unwanted --

5              THE COURT:  Conduct-based complaint, right?

6              MR. LAWLOR:  Pardon?

7              THE COURT:  Conduct-based complaint.

8              MR. LAWLOR:  Conduct, exactly.

9              He said, "I never get to work with children again

10   if I enter a guilty plea."

11             And so it took a lot of convincing from me and

12   Mr. Madiou.  It sort of belied any sense of logic, and I

13   wish I could -- you know, I wish I could divine exactly what

14   makes Mr. Roberson tick, but I don't think it's because he's

15   this deceptive person who has no respect for the law.  I

16   think he's a human being who's complex, who has lived

17   through a lot, who lives differently than perhaps you or I

18   or government counsel do, and has certain feelings about

19   certain things.  But to suggest that that is because he has

20   this deep-rooted lack of respect for the law, I think,

21   misses the entire point, Your Honor.

22             Your Honor, the final thing I'll say is -- well,

23   the final couple of things I'll say is that it's not one

24   single thing here, and I think the Court knows that.  There

25   are a constellation of issues here that I think warrant, at

1     a minimum, a significant variance.

2          But I mentioned this when I asked that Your Honor

3     to not incarcerate Mr. Roberson pending this hearing, is

4     that -- you know, I don't know how to capture this in a

5     legal term, but having -- having done this job for 25 years

6     and, you know, seen clients of mine go to jail from various

7     backgrounds -- I mean, the biggest gangster to the shakiest

8     18-year-old kid -- I worry about Mr. Roberson; not just his

9     ability to be safe in prison, but I worry for him, more than

10    most clients I've ever had, what prison will do to him given

11    the things that he has already had to endure.

12         Because I think, Your Honor -- I mean, I talked

13    to Mr. Roberson a couple of months ago.  I talked to

14    Dr. Kraft when we were trying to set up the interview.  And

15    Mr. Roberson was in a period where he wasn't getting out of

16    bed because he has -- still has significant bouts of

17    depression and these associated mental health issues.  And

18    so I do worry for him, Your Honor, like I said, more than I

19    worry for most of my clients about what a prison term will

20    do to him.

21         And while many may just shrug their shoulders and

22    say, well, you know, if you can't do the time, but I think

23    it's -- again, Your Honor, it's more nuanced than that.

24         I think, Your Honor, the constellation of

25    mitigating circumstances here, the hardships that

1     Mr. Roberson has to endure, has had to endure, and most

2     importantly, Your Honor, the time that has lapsed since the

3     offense, which demonstrates to the Court I think more than

4     what any study could show, is that this is a person who's

5     not a risk of reoffending.

6            And so what it boils down to, then, is punishment,

7     which I don't discount the rationale for.  I don't think

8     that Mr. Roberson requires deterrence.  I think we could

9     have a lengthy debate that none of us want to engage in

10    about how much any one sentence the Court imposes deters the

11    general public.

12           But I do believe that the need for punishment or

13    deterrence is offset here by the period of lawful behavior,

14    not just regarding child porn, but obviously being on

15    release successfully and given all the challenges that

16    Mr. Roberson has had to face.  And these aren't going to go

17    away when he gets out of jail in two, four, six, seven

18    years.  They're going to be there, and they're going to be

19    even more pronounced, I submit.

20           And so, Your Honor, I didn't make this request

21    because I was, you know, taking a stab in the dark.  I made

22    this request using the language I did because I genuinely

23    believe it is a reasonable and just outcome in this case.

24           THE COURT:  All right.  Thank you, Mr. Lawlor.

25           Does Mr. Roberson wish to address the Court?

1          MR. LAWLOR:  Yes, he does.  Can I have your

2     indulgence?

3          THE COURT:  You may.

4          (Pause)

5          THE COURT:  Good afternoon, Mr. Roberson.

6          THE DEFENDANT:  Good afternoon, Judge Bates.

7          THE COURT:  You're going to have to use the

8     microphone and speak clearly into it.

9          THE DEFENDANT:  Yes, sir.  Good afternoon, Judge

10    Bates.

11         THE COURT:  Good afternoon.

12         THE DEFENDANT:  Good afternoon, Court.

13         Dear Judge Bates, I'm writing this letter to

14    express my remorse, and I do take full responsibility of my

15    actions.  I understand that I have been found --

16         (Pause)

17         THE DEFENDANT:  I'm sorry.

18         THE COURT:  It's all right.

19         THE DEFENDANT:  I understand that I've been found

20    guilty for which I am being sentenced today, and I'm

21    prepared to take -- I'm prepared to face the consequences of

22    my actions.

23         I would like to assure you that I'm not a bad

24    person, and I do regret the harm that I've caused.  I take

25    full accountability for my actions, and I understand that

1    they were wrong.

2          I have learned a lot from this situation, and I

3    have committed myself to making the appropriate changes to

4    my life to ensure that I never make the same mistakes again.

5    I have people set in place as accountability partners who

6    are not just my new family but also my village.  People such

7    as my pastor, siblings, therapists, and church members.

8          Therefore, I'm asking for your leniency in my

9    sentencing as I am a hard worker and caring person.  I am

10   committed to and currently seeing a therapist and a

11   psychiatrist.  I am also pursuing my diploma and bachelor's

12   in Christian counseling through Shiloh Baptist College

13   located in the Bahamas.  That's where my pastor is from.

14         Through my pastor, Dr. Valentino Stubbs, I am also

15   in training to become a pastor, which has been my dream

16   since I was a little boy.  I just always had a love for God.

17         I understand that I caused harm, and I apologize

18   for my actions.  I'm hoping that you will consider my

19   request for leniency and allow the opportunity to prove that

20   I can be a productive member of society.

21         Thank you for your time and consideration, Judge

22   Bates.

23         THE COURT:  Thank you, Mr. Roberson.

24         Give me one second, please.

25         (Pause)

1          THE COURT:  All right.  Now, we do have a victim

2    impact statement that was filed.  It's under seal.  It's at

3    ECF-76 on the docket, but I'll address that more in just a

4    second.

5          The materials I've received have included the

6    presentence investigation report, that victim impact

7    statement, very helpful memoranda from each side, the

8    report of Dr. Kraft, letters from the defense side, which

9    I've read closely, and, of course, the arguments here

10   today, which, again, have been very helpful and well done,

11   and Mr. Roberson's comments as well.

12         Let me cover a couple of economic or financial

13   issues, and then I'll ask Mr. Roberson and his counsel to

14   come up to the lectern.

15         But first let me talk about restitution.

16   Restitution is an issue as well as special assessments in a

17   case like this.  As I've indicated in the discussion with

18   Mr. Palomo, this conduct was before 2018, and the government

19   agrees that 18 USC Section 2259(b)(2)(B) does not apply

20   because the conduct did occur before 2018.

21         Although we have the victim impact statement, the

22   government has indicated that it is not requesting

23   restitution or an additional special assessment beyond the

24   $100 statutorily mandated assessment, and that's because

25   there is no specific victim information to support such a

1    request, either for restitution under 3663 or 3663A or an

2    assessment under 18 USC 3014A or 18 USC 2259A.

3              In those instances, because I've concluded, as the

4    probation office has as well, that the defendant is indigent

5    and the government agrees with that, those assessments will

6    not be imposed, and nor will restitution be ordered for the

7    reasons that I've indicated.

8              With respect to a fine, I've concluded that there

9    is an inability to pay a fine even without a restitution

10   order or a substantial special assessment.  No fine,

11   therefore, will be imposed.

12             So I'm going to go through now the reasons for the

13   sentence that I will impose and the details of that

14   sentence, and to do so, I would like to have Mr. Roberson up

15   at the lectern with counsel, please.  And I'll only be doing

16   this once, even though I will give counsel an opportunity, a

17   final opportunity, to make any legal objections before I

18   formally impose the sentence, but I'll only go through it

19   once.

20             As the government began and as everyone agrees, I

21   think, we're dealing with a very serious offense.  There's

22   no question that child pornography, whether it's possession,

23   receipt, distribution, or production, is very serious

24   problem and a very serious offense in the criminal justice

25   system.  There are actual victims, and there is continuing

1    impact from viewing and possessing and distributing child

2    pornography, and there is a community harm that occurs.

3           Now, the offense here in one sense is limited to a

4    single, fairly short video, and that is the offense conduct

5    that gives rise to the plea of guilty to the one count.

6           The context, however, would seem to indicate that

7    more was sought by Mr. Roberson, and it's pretty reasonable

8    to conclude that in that almost a year, I think, or more

9    than a year of communication with the individual I will

10   call Frank online, it's reasonable to conclude that there

11   may have been access to more.  That was the objective, it

12   seems, of the sharing -- that is, the distribution of the

13   one video -- with Frank.

14          On the other hand, we don't have hard evidence of

15   anything more than this one video, and this occurred back in

16   2016, and there's no evidence at all of any possession or

17   distribution of child pornography in the succeeding seven

18   years or so.

19          The defendant has accepted responsibility.  I will

20   say that that was belated, but it nonetheless has occurred.

21   And he has shown remorse, and that is to his credit.

22          Unfortunate facts here are that there is a history

23   of Mr. Roberson experiencing sexual abuse as a child, pretty

24   serious sexual abuse.  And partly as a result of that, but

25   for whatever other reasons, he does have some mental health

1    issues that he is coping with.

2           I don't think they're unrelated to that abuse.

3    They may involve more than just that abuse as mental issues

4    generally do.

5           But certainly that is something that I think the

6    government agrees that I need to take into account, his

7    mental health and his history of sexual abuse as a child.

8           There's no evidence of inappropriate interest in

9    children manifested by any kind of conduct, and that's

10   despite or not withstanding the fact that he has for

11   substantial periods worked with children.  There's no

12   evidence of any inappropriate activity or conduct on his

13   part.

14          And Dr. Kraft agrees with that.  And I'll say with

15   respect to Dr. Kraft's report, I'll say right now, I do

16   think that there are some shortcomings with respect to that

17   report.  It does not seem to me that it engaged in the kind

18   of testing, scientifically-based testing, that is often

19   conducted, and it does seem to me that it relies pretty

20   extensively on what Mr. Roberson told Dr. Kraft.  I don't

21   know that they were even in-person interviews.

22          Were they in-person interviews, Mr. Lawlor?  Do

23   you know?  Or were they video?

24          MR. LAWLOR:  They were in person, Your Honor.

25          THE COURT:  Pardon me?

1          MR. LAWLOR:  I believe they were in person.

2          THE COURT:  If they were in person --

3          MR. LAWLOR:  I was not present.

4          THE COURT:  All right.

5          In any event, I'm placing only minimal reliance on

6    that report.  I'm not discarding it altogether, and I'm not

7    finding that it's of no value, but I do think that there are

8    some shortcomings with respect to it, although I will refer

9    to it once or twice, I believe, as I continue discussing the

10   reasons for the sentence here.

11         So we've got the Sentencing Guidelines, and the

12   Sentencing Guidelines, the range here, is pretty high.  It's

13   108 to 135 months.  The low end of that guideline range is

14   nine years of incarceration, and the government is asking

15   for that.

16         The probation office as well asks for that.

17         The defendant, on the other hand, has asked for a

18   variance all the way down to a noncustodial sentence, and so

19   it's up to me to sort that out and figure out what is a

20   reasonable sentence here.

21         I will say that judges in this district and

22   elsewhere most often vary downward in these types of cases.

23   Sometimes very considerably, and even on occasion in this

24   court and elsewhere all the way to probation for a

25   possession crime such as this.  I would call that the

1    exception, not the rule, but it does happen.

2          So let me talk a little bit about the guidelines.

3          The base offense level here is an 18, but then

4    it's increased by 15 levels because of what we call special

5    offense characteristics that I went through as I did the

6    guideline calculation, and those are appropriate under the

7    guidelines.

8          But, the question is, are the guidelines really

9    appropriate at this point in time?  I would venture to say

10   that at some point, now that the Sentencing Commission has a

11   full complement of commissioners, there may be some changes

12   to those guidelines.  But in any event, they are what we

13   have now.  But I think most judges are hesitant to adopt all

14   of these special offense characteristics.

15         For example, the two-level increase for material

16   involving a prepubescent minor under the age of 12 years

17   coupled with the four-level increase for material portraying

18   sadistic or masochistic conduct or sexual abuse of an infant

19   or toddler.  Those two special offense characteristics sort

20   of go together, and they result in six levels of increase.

21         I think in the latest statistic I saw, I think it

22   was based on 2019 offenses, 99 percent of possession cases

23   have the prepubescent minor characteristic and over 95

24   percent involve someone under the age of 12, and about 85

25   percent involve the sadistic or masochistic conduct or

1     sexual abuse of an infant or toddler.

2             It's just so commonplace.  They're so frequently

3     the situation in these child pornography cases that you

4     wonder why it's a special offense characteristic if it's

5     true in virtually every case, and I think that causes some

6     pause for judges, including myself.

7             That five-level increase under 2G2.2(b)(3)(B),

8     very considerable increase, for a defendant who distributed

9     in exchange for any valuable consideration a nonpecuniary

10    gain, that's pretty unusual.  You don't see that in most

11    cases.  You don't even see the pecuniary gain in most cases.

12            Sometimes you see 2G2.2 -- let me get the specific

13    reference; I don't want to misstate it -- 2G2.2(b)(3)(F),

14    which is a -- that's (b)(3)(F), which is a two-level

15    increase if none of the other provisions under (b)(3) apply.

16    But you don't really see this five-level increase very

17    often, and it's very unusual.  It's large.  It doesn't seem

18    to cleanly fit.  It's usually probably in distribution cases

19    rather than in possession cases, although most possession

20    cases involve some additional either distribution or

21    production or receipt.

22            I mean, it's not that pleas to possession cases

23    are always free of some of these other considerations, but

24    this is a pretty unusual five-level increase that is really

25    tagged -- most of the provisions in (b)(3) are tagged to an

1    offense involving distribution.  That's not what we have

2    here.

3            But this particular one, the (3)(b), is not worded

4    in the same way.  It just is worded if the defendant

5    distributed as opposed to the offense involved distribution.

6            In any event, while I think under the guidelines

7    it's properly applied, I question whether it's really an

8    addition to the offense level here that is not really

9    warranted.

10           So what haven't I covered?  I haven't covered use

11   of a computer.

12           Virtually every judge has noted that all of these

13   offenses involve use of a computer.  Indeed, I think the

14   statistic I've seen is over 95 percent, and that is a reason

15   to question whether it's a -- whether a specific offense

16   characteristic bumping up two levels, the offense level, is

17   really warranted.

18           And lastly, there's the special offense

19   characteristic dealing with the number of images.  As

20   I said, a video such as the one video involved here winds

21   up -- this length of video winds up being counted as 75

22   images, and therefore you have a two-level increase in a

23   case that, in terms of the actual material, is a single

24   item.  That seems a little odd, that where you have a case

25   with only one item -- and every case has to have at least

1    one item -- you get an increase to the offense level because

2    of that one item.

3           So when I assess all of this, it winds up that I

4    come out somewhere close to what Mr. Lawlor happened to

5    indicate, that it seems like more of a Level 22 than a Level

6    31 to me, and a Level 22 would be 41 to 51 months; in other

7    words, the bottom of the offense -- the bottom of the

8    guideline range would be 41 months.

9           That seems to me to be what an appropriate

10   analysis of the guidelines might lead to in terms of a

11   typical variance.

12          But that's not the end of the analysis here

13   because we then have to take into account other

14   considerations unique to the defendant who stands before

15   me, and those considerations include the sexual abuse that

16   he experienced as a child, his mental health issues, the

17   fact that there's nothing to indicate any involvement in

18   child pornography, any possession or distribution or

19   anything else since November of 2016, including two and a

20   half years approximately between that last communication

21   with Frank and the beginning of the investigation as it

22   involved Mr. Roberson; in other words, the contact by

23   investigators with him in I believe March of 2019.

24          There's low volume here by any measure.  It may

25   not be fair to limit it simply to the one video, but by any

1    measure, it's a pretty low volume.

2         I do think that the defendant has some unique

3    characteristics that may make him more vulnerable in

4    incarceration than perhaps other defendants might be,

5    although some of that vulnerability may come simply from the

6    offense conduct involved here.

7         I do conclude, based on general statistics that

8    you can glean from Sentencing Commission materials,

9    including the 2021 report on nonproduction child pornography

10   offenses that is based on 2019 cases, and that would

11   indicate a pretty low sexual recidivism risk.  The rate is

12   around 4 percent, as indicated there.

13        That's consistent with what Dr. Kraft concluded,

14   although he went even further saying there was no risk,

15   which does seem to me to be perhaps a step too far.

16        Now, on the other side is something that is of

17   concern to me, and that is the denial and deception that has

18   been displayed by Mr. Roberson in the course of the

19   investigation, the delay in acceptance of responsibility all

20   the way up to the day of trial, and some concern that

21   everything that he said to Dr. Kraft that Dr. Kraft accepted

22   may not have been 100 percent candid and forthcoming.

23        I do think that a long term of incarceration,

24   certainly something close to nine years, is not warranted

25   here and poses some risks that should be avoided.

48

1          On the other hand, a period of incarceration, I

2    have concluded, is warranted for the reasons that are set

3    out in Section 3553(a) of Title 18, and my conclusion is

4    that that period of incarceration should be substantial but

5    not close to the nine years that is represented by the

6    108-month bottom end of the guidelines.

7          I've already said, because of the guideline

8    calculation, that I would vary considerably from that, and

9    I will vary further based on the situation with respect to

10   Mr. Roberson and his past history, his mental health issues,

11   and the absence of any child pornography involvement at

12   least in the evidentiary record since November of 2016.  And

13   I've concluded that a sentence of 28 months is appropriate

14   here.

15          That is a substantial variance.  It's not what

16   some judges have done in similar cases -- I don't want to

17   say exactly the same case, but similar cases -- in varying

18   all the way down to a noncustodial sentence or down to a

19   year and a day or something of that sort.  It's still a

20   substantial sentence, although with credit for time served

21   and for good time credit it will probably wind up being a

22   little less than two years of time that needs to be served

23   from this date, and it is a very significant variance to

24   about a quarter of the bottom of the guideline range.

25          But I believe that's warranted here for the

1    reasons I've indicated, and I think that that will be a

2    sentence that is sufficient in the language of 3553(a) but

3    not greater than necessary to comply with the purposes set

4    out in the statute.  It takes into account full

5    consideration of the nature and circumstances of the offense

6    and the history of Mr. Roberson and his characteristics and

7    will reflect not only the seriousness of the offense and the

8    need for punishment and promotion and respect for the law,

9    but I do think it's important to recognize the need for

10   deterrence.  It will deter Mr. Roberson specifically, but

11   also others who may contemplate engaging in this type of

12   conduct.  A meaningful serious sentence of incarceration is

13   needed to afford adequate general deterrence to others who

14   may contemplate this kind of conduct.

15          It also is, on my assessment -- and this is a

16   difficult assessment -- a sentence that will avoid

17   unwarranted sentence disparities among defendants with

18   similar records who have been found guilty of similar

19   conduct, the (a)(6) provision in 3553.

20          That's a difficult assessment because, as is

21   recognized by counsel and in this court generally, the

22   sentences in these cases can be all over the map.  Indeed,

23   if you look at the same report of the Sentencing Commission

24   that I referenced a moment ago, it, in an analysis of

25   possession offenses, I think 119 cases that it was looking

1    at, indicated that while the average sentence was 47 months,

2    over 80 percent were sentenced below the guideline range and

3    the sentences ranged from probation all the way to 228

4    months for possession offenses of this kind.  So there's a

5    pretty significant variation.

6          And even when I look at cases that are more

7    specifically similar to this case in terms of the guideline

8    range and the volume and considerations of past sexual abuse

9    or mental health issues, you wind up seeing sentences that

10   are several years and sentences that are probation.  You

11   don't wind up, for the most part, with sentences that are

12   108 months, although we could find one or two certainly.

13   But there certainly is a wide range.

14         But I think this sentence of 28 months is one that

15   takes into account all the individual factors relevant to

16   Mr. Roberson as well as all the considerations under 3553(a)

17   in terms of the Court's sentencing obligations.

18         With that, let me now read the sentence that will

19   be imposed.

20         Pursuant to the Sentencing Reform Act of 1984

21   and in consideration of the provisions of 18 USC Section

22   3553 as well as the advisory Sentencing Guidelines, it is

23   the judgment of the Court that you, Michael Terrell

24   Roberson, are hereby committed to the custody of the Bureau

25   of Prisons for a term of 28 months -- that is two years and

1    four months -- on Count 1.

2          You are further sentenced to serve 60 months --

3    that is a five-year-term -- of supervised release as to

4    Count 1.

5          In addition, you are ordered to pay a special

6    assessment of $100 in accordance with Title 18 of the U.S.

7    Code Section 3013.

8          You will receive credit for time served.  You

9    served almost a month of incarceration previously back in

10   2021 from late February to late March.

11         While on supervision, you shall abide by the

12   following mandatory conditions as well as all discretionary

13   conditions recommended by the probation office in Part D,

14   "Sentencing Options of the Presentence Report," which are

15   imposed to establish the basic expectations for your

16   condition while on -- I'm sorry, for your conduct while on

17   supervision.

18         The mandatory conditions include that you must not

19   commit another federal, state, or local crime; that you must

20   not unlawfully possess a controlled substance; that you must

21   refrain from any unlawful use of a controlled substance.

22   You must submit to one drug test within 15 days of placement

23   on supervision and at least two periodic drug tests

24   thereafter as determined by the Court; that you must

25   cooperate in the collection of DNA as directed by the

1    probation officer; and that you must comply with the

2    requirements of the Sex Offender Registration and

3    Notification Act as directed by the probation officer, the

4    Bureau of Prisons, or any state sex offender registration

5    agency in the location where you reside, work, are a

6    student, or were convicted of a qualifying offense.

7            You shall comply with the following special

8    conditions.

9            With sex offender registration.  You shall comply

10   with the sex offender registration requirements for

11   convicted sex offenders in any state or jurisdiction where

12   you reside, are employed, carry on a vocation, or are a

13   student.

14           You must participate in a sex-offense-specific

15   assessment.  You must pay a percentage of the cost of the

16   assessment as determined by the probation office.  You must

17   participate in a sex offense specific treatment program and

18   follow the rules and regulations of that program.  The

19   probation officer will supervise your participation in the

20   program.  You must pay a percentage of the cost of the

21   program as determined by the probation office.

22           You must submit to periodic polygraph testing at

23   the direction of the probation officer as a means to ensure

24   that you are in compliance with the requirements of your

25   supervision or treatment program.

1              You must not have direct contact with any child

2       you know or reasonably should know to be under the age of 18

3       without the permission of the probation officer.  If you do

4       have any direct contact with any child you know or

5       reasonably should know to be under the age of 18 without the

6       permission of the probation officer, you must report this

7       contact to the probation officer within 24 hours.

8              "Direct contact" includes written communication,

9       in-person communication, or physical contact.  "Direct

10      contact" does not include incidental contact during ordinary

11      daily activities in public places.

12             You must allow the probation officer to install

13      computer monitoring software on any computer as defined by

14      statute that you use.  You must submit your computers,

15      again, as defined by statute, or other electronic

16      communications or data storage devices or media to a search.

17      You must warn any other people who use these computers or

18      devices capable of accessing the Internet that the devices

19      may be subject to searches pursuant to this condition.

20             The probation officer may conduct a search

21      pursuant to this condition only when reasonable suspicion

22      exists that there is a violation of a condition of

23      supervision and that the computer or device contains

24      evidence of this violation.  Any search will be conducted at

25      a reasonable time and in a reasonable manner.

 1          You must submit to substance abuse testing to

 2    determine if you have used a prohibited substance.  You must

 3    not attempt to obstruct or tamper with the testing methods.

 4    The Court finds that you do not have the ability to pay a

 5    fine and therefore waives imposition of a fine in this case.

 6          The financial obligations are immediately payable

 7    to the Clerk of the Court for the U.S. District Court, and

 8    within 30 days of any change of address you shall notify the

 9    Clerk of the Court of the change until such time as the

10    financial obligation is paid in full.

11          The probation office shall release the presentence

12    investigation report to all appropriate agencies, which

13    includes the United States Probation Office in the approved

14    district of residence in order to execute the sentence of

15    the Court.  Treatment agencies shall return the presentence

16    report to the probation office upon the defendant's

17    completion or termination from treatment.

18          Now, Mr. Roberson, you were convicted by a plea of

19    guilty.  You can appeal your conviction if you believe that

20    your guilty plea was somehow unlawful or involuntary or if

21    there's some other fundamental defect in the proceedings

22    that was not waived by your guilty plea.  You also have a

23    statutory right to appeal your sentence under certain

24    circumstances, particularly if you think the sentence is

25    contrary to law.

1          However, the defendant may waive those rights as

2     part of a plea agreement, and you have entered into a plea

3     agreement which waives some or all of your rights to appeal

4     your conviction and the sentence itself.  Such waivers are

5     generally enforceable, but if you believe the waiver is

6     unenforceable, you can present that theory to an appellate

7     court.

8          You have the right to apply for leave to appeal

9     informa pauperis, and if you were to so request and qualify,

10    then the Clerk of the Court would prepare and file a notice

11    of appeal on your behalf.  But I note that you are

12    represented here today by extremely able counsel who would

13    presumably assist you in that process if you wished to

14    follow it.  With few exceptions, any notice of appeal must

15    be filed within 14 days of the entry of judgment.

16          I expect that judgment will be entered probably

17    not today, since it is late in the day, but tomorrow or

18    Friday.

19          With that, let me ask counsel if there are any

20    reasons other than the reasons that have already been stated

21    and argued here today why this sentence should not be

22    imposed as I have just indicated.

23          Mr. Lawlor?

24          MR. LAWLOR:  None, Your Honor.

25          THE COURT:  Mr. Palomo?

```
 1              MR. PALOMO:  None from the government, Your Honor.

 2              THE COURT:  All right.  We need to ask if there's

 3     anything else that needs to be covered.

 4              Mr. Roberson can probably have a seat, if you want

 5     to have a seat.

 6              But is there any recommendation that the defense

 7     wants to make in terms of placement or --

 8              MR. LAWLOR:  Your Honor, I don't know where

 9     placement.  I feel like for these kinds of cases, placement

10     is different than the standard, but I'll make the request

11     for Cumberland in Maryland.

12              THE COURT:  I'll include that.  I think you're

13     right, that there are different determinations --

14              MR. LAWLOR:  Considerations.

15              THE COURT:  -- that go into it.

16              MR. LAWLOR:  Yes.

17              THE COURT:  But I don't have any problem with

18     including that as a recommendation from the Court.

19              MR. LAWLOR:  I guess, even though I don't think

20     he'd get a sentence reduction, would you request the RDAP

21     program, which I know they have an RDAP?  I doubt he'll be

22     eligible for a reduction, but the program would likely do

23     him some good.

24              THE COURT:  All right.  We can do that as well.

25     He may not be eligible for it, or, as you say, it may not
```

1    result in any reduction given the sentence involved here.

2         Then we also have to dismiss the underlying

3    indictment.

4         MR. PALOMO:  The indictment, Your Honor, yes.

5         THE COURT:  And with the government's request that

6    will be dismissed, the indictment in this case that has been

7    superseded by the information to which the plea was entered.

8         And with that, I order that the sentence is

9    imposed as I have indicated it with these additions that

10   we've just discussed, and that is the sentence of the Court.

11        Then there's the question of release pending

12   sentence, and Mr. Palomo, what is the request of the

13   government?

14        MR. PALOMO:  We request that he be detained today,

15   Your Honor.

16        THE COURT:  Do you think that the statutory

17   provisions require it?

18        MR. PALOMO:  Yes, Your Honor.

19        THE COURT:  That he be detained?

20        MR. PALOMO:  As we discussed at the prior hearing,

21   the same logic applies in that there's no extraordinary or

22   exceptional circumstance that would warrant delaying his

23   commitment to the Bureau of Prisons, Your Honor.

24        THE COURT:  Mr. Lawlor?

25        MR. LAWLOR:  Your Honor, for the same reasons that

1    I argued and the Court found at the last detention hearing

2    following the guilty plea, I think --

3              THE COURT:  At the last sentencing hearing?

4              MR. LAWLOR:  The last detention hearing following

5    Mr. Roberson's plea of guilty I think are applicable here,

6    and so I would ask the Court to permit him to voluntarily

7    surrender.

8              THE COURT:  Do things change under the statutory

9    assessment post sentencing rather than post guilty plea?

10             MR. LAWLOR:  Not that I'm aware of.

11             THE COURT:  Does the government believe that under

12   the statute things change?

13             MR. PALOMO:  That's not our understanding.

14             THE COURT:  You think we're in the same situation?

15             MR. PALOMO:  We're in the same posture, yes, Your

16   Honor, except now he's been convicted and sentenced, which

17   is a new factor that weighs in favor of immediate detention.

18             THE COURT:  And I understand that, and I think

19   that it is an additional factor.

20             I'm going to go ahead and continue him on the same

21   release conditions he's on and allow him to report when

22   directed to report.

23             So, Mr. Roberson, you will continue on release

24   under the same conditions you've been under.  You need to

25   comply with those conditions.  A failure to do so would

1    subject you to independent serious consequences.

2              You will get a reporting date, and you will have

3    to report at the place and date indicated.  A failure to do

4    so will subject you to independent criminal consequences.

5              And lastly, if you were to commit a crime while on

6    release prior to reporting for service of the sentence, you

7    could be subject to more serious consequences for that crime

8    than you otherwise would face.

9              So, you know, I could step you back and have you

10   incarcerated today, but this is going to allow you to get

11   your affairs in order, and you'll get that reporting date,

12   and you'll have to report for service of this sentence.

13             And my expectation and hope -- maybe those are

14   inconsistent, but my hope and expectation is that there will

15   be no problems for you in the interim, and that you will

16   report as directed and serve this sentence and I hope come

17   out and be a productive, law-abiding, contributing member of

18   society in the future.

19             You have a long life ahead of you.  You need to

20   make the most of that life and stay out of these

21   circumstances in the future.  That's going to take some work

22   on your part.  Let's hope you're up to it.

23             With that, we're done for the day, and thank you.

24                  (Whereupon the hearing was

25                   concluded at 4:36 p.m.)

1        <u>**CERTIFICATE OF OFFICIAL COURT REPORTER**</u>

2

3                I, LISA A. MOREIRA, RDR, CRR, do hereby

4     certify that the above and foregoing constitutes a true and

5     accurate transcript of my stenographic notes and is a full,

6     true and complete transcript of the proceedings to the best

7     of my ability.

8          Dated this 12th day of July, 2023.

9

10                                   <u>/s/Lisa A. Moreira, RDR, CRR</u>
                                     Official Court Reporter
11                                   United States Courthouse
                                     Room 6718
12                                   333 Constitution Avenue, NW
13                                   Washington, DC 20001

14

15

16

17

18

19

20

21

22

23

24

25